UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER RILEY,

     Plaintiff,         No. 20-10577

v.               District Judge Paul D. Borman
                Magistrate Judge R. Steven Whalen

SK UNITED CORP.,

     Defendant.

_____ /

## REPORT AND RECOMMENDATION

    Plaintiffs bring this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a) and 216(b). Before the Court is Plaintiffs' pre-discovery motion for conditional certification and court-authorized notice to potential opt-in Plaintiffs [ECF No. 13], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

## I.  FACTS

    The complaint in this case alleges that Named Plaintiff Roger Riley was employed by Defendant S&K United Corp. ("S&K"), a Texas corporation. Riley drove a delivery truck, delivering packages for FedEx. He states that he worked out of S&K's distribution center in Auburn Hills, Michigan, although S&K also employs drivers that work out of other distribution centers. According to the Collective and Class Action Complaint [ECF No. 1], S&K pays its drivers, including Riley, on a day-rate basis, not hourly, and classifies them as being exempt from overtime pay under the FLSA. *Complaint*, ECF No. 1, PageID.4, ¶ 22. Plaintiff and similarly situated drivers "frequently drove vehicles

weighing under 10,000 pounds and work in excess of 40 hours in a workweek." *Id*., PageID.5, ¶ 28. Plaintiff alleges that regardless of how many hours he and similarly situated drivers worked, Defendant paid them a flat rate of $160 per day. *Id*., ¶ 29.

Plaintiff brings this collective action under § 216(b) of the FLSA on behalf of the following class of employees:

> "All current and former day-rate-paid Drivers who worked for Defendant in the United States at any time from three years prior to the date the Court grants conditional certification through a date specified by the Court."

*Id*., PageID.7-8, ¶ 42.

Appended to this motion as Plaintiff's Exhibit 3 is the Declaration of Plaintiff Roger Riley, who states that Defendant S&K employed him as a package delivery driver from November 2017 to approximately December 2019. ECF No. 13-3, PageID.101, ¶ 2. He was compensated at a flat day rate regardless of how may hours per week he worked. *Id*. ¶ 4. It was the norm for him to work in excess of 40 hours per week, and it was not uncommon for him to work more than 50 hours per week. *Id*., PageID.101-102, ¶¶ 5-6. He states that he never received any overtime compensation, and the Defendant classified him as exempt under the FLSA. *Id*. ¶ 7.  He states that Defendant provided him with a van that had a gross vehicle weight of less than 10,000 pounds. *Id*. ¶ 10.  Mr. Riley states that he was based out of Defendant's terminal in Auburn Hills, Michigan, but he came to know drivers who worked out of other terminals, and "learned they were similarly situated to me in the following ways: a) they were all paid by Defendant on a day rate; b0 they drove vans provided by Defendant with a gross vehicle weight of less than 10,000 pounds; and c) they regularly worked in excess of forty hours in a single week, but did not receive overtime premium compensation at one and one half times their regular hourly rate." *Id*., PageID.103, ¶ 12.

-2-

Plaintiff's Exhibit 5 consists of photographs of the van that Plaintiff drove during the course of his employment, which had a Gross Vehicle Weight of 9,900 pounds (4,491 kg). ECF No. 13-5, PageID.109-111.

Appended to Defendant's response is the Declaration of Noah Sperling, one of the owners of S&K United. He states that S&K serves as an Independent Services Provider ("ISP") for FedEx, and that S&K's lone customer is FedEx. ECF No. 14-1, PageID.153, ¶ 2.[1] As an ISP, S&K "provides package pickup and delivery services for FedEx." *Id*. ¶ 5. He states that S&K drivers work out of FedEx distribution centers, that where drivers work and how many hours they work varies, and that "drivers start and end their workday based on their assigned route(s)." *Id*., PageID.155, ¶¶ 11-12.

Mr. Sperling states that employees drive vehicles with differing Gross Vehicle Weights, "many of which have a GVWR over 10,000 pounds," adding, "S&K United also utilizes rental vehicles, the GVWR of which vary, with many having a GVWR of more than 10,000 pounds." *Id*., PageID.156, ¶ 15.

Mr. Sperling states that S&K did not hire Plaintiff Riley until November 10, 2018, when SK began operations in Michigan, *id*, PageID.156-157, ¶ 18, and that Plaintiff last worked for S&K on January 14, 2020. *Id*. ¶ 17. He states that during the period from May 18, 2017 to the present, S&K employed 133 drivers, 65 of whom where employed in Michigan. *Id*. ¶¶ 23-25.  He states that beginning on May 9, 2020, "SK United began paying <u>all</u> drivers who drive a motor vehicle with a GVWR of less than 10,001 lbs. at least once during a workweek on an hourly rate....Since then, no driver is paid based upon

---

[1] However, in its answer to the complaint, Defendant admitted the allegation that "Defendant S&K United is a package delivery corporation, which contracts with FedEx *and other larger companies* to deliver packages in Michigan and other states." ECF No. 8, PageID.36. (Emphasis added).

a daily rate." *Id*. ¶ 28. (Emphasis in original).

## II.   STANDARD OF REVIEW

The FLSA provides that "no employer shall employ any of his employees...for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The FLSA authorizes collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To participate in FLSA collective actions, "all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544, 546 (6th Cir. 2006).[2] Only "similarly situated" employees may opt in to such actions. *Id*. "The sole consequence of conditional certification is the sending of court-approved written notice to employees...who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Crop. v. Symczyk*, 569 U.S. 66, 75 (2013).

At the notice, or pre-discovery stage of a collective action under § 216(b), "conditional certification may be given along with judicial authorization to notify similarly situated employees of the action. Once discovery has concluded, the district court—with more information on which to base its decision and thus under a more exacting standard—looks more closely at whether the members of the class are similarly situated." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396–97 (6th Cir. 2017) (citing *Comer*, 454 F.3d at 547). In *Taylor v. Pilot Corp*., 697 F. App'x 854, 857 (6th Cir. 2017),

_____

[2] A collective action under § 216(b), which requires plaintiffs to opt in, thus differs from a class action under Fed.R.Civ.P. 23, where class members are either bound by the litigation or must opt out of a suit to avoid becoming parties bound by any judgment. *See Taylor v. Pilot Corp*., 697 F. App'x 854, 857–58 (6th Cir. 2017).

the Sixth Circuit described conditional certification of a collective as follows:

> "Generally, 'class certification' in a collective action unfolds in two stages. At stage one, the court supervises plaintiff's notice to employees who may become plaintiffs. [*Comer*]. at 547. The court will usually receive a motion from the plaintiff asking it to approve a letter informing employees that they may be 'similarly situated' to her and may consent to joining the action. *Id*. at 547. At this point, the court conditionally decides which employees count as being 'similarly situated' to the plaintiff and thus eligible to receive a court-approved letter. See id. (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 167–68, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). Courts and litigants often refer to this stage as 'conditional class certification.' See, e.g., *id*. Unlike actual class certification under Rule 23, however, its only effect is to allow notice to the employees—the 'conditional-class members' do not become parties or obtain any 'independent legal status.' *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 133 S.Ct. 1523, 1530, 185 L.Ed.2d 636 (2013)."

To determine whether employees are "similarly situated," courts generally examine three non-exhaustive factors: (1) the "factual and employment settings of the individual[ ] plaintiffs"; (2) "the different defenses to which the plaintiffs may be subject on an individual basis"; and (3) "the degree of fairness and procedural impact of certifying the action as a collective action." *Monroe*, 860 F.3d at 397 (quoting *O'Brien v. Ed Donnelly Enters., Inc*., 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Employees can be found to be similarly situated if they were subject to "a single, FLSA-violating policy" by their employer, or if their "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct...." *Id*. at 398 (quoting *O'Brien*, 575 F.3d at 584–85).

"At the conditional certification stage, the Court employs a 'fairly lenient standard, [that] typically results in conditional certification of a representative class.'" *Lockhart v. D&S Residential Servs., LP*, 2020 WL 4717910, at *4 (W.D. Tenn. Aug. 13, 2020) (quoting *Comer* at 547).

### III.   DISCUSSION

We are at Stage One, or the "notice stage" of a collective action. While the Plaintiff has the evidentiary burden at this stage of showing that the employees to be noticed are "similarly situated," that burden is not particularly heavy. Rather, "[t]he plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, at 546-547 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). *See also Lockhart*, at *4; *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234, 238 (N.D.N.Y.2002) (plaintiffs must "make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.").

First, it is important to differentiate between which drivers employed by the Defendant are exempt under the FLSA and which are not. In general, § 207(a)(1) of the FLSA–the overtime wage requirement–does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service...." 29 U.S.C. § 213(b)(1).  And the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502(b)(2), "gives the Secretary of Transportation 'the authority to regulate the hours of an employee (1) who works for a private motor carrier that provides transportation in interstate commerce and (2) whose work activities affect the safety of operation of that motor carrier.'" *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002)(quoting *Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1106–07 (4th Cir.1997)). *See also* 29 C.F.R. § 782.2 (MCA exemption).  However, the Technical Corrections Act ("TCA"), Pub. L. 110-244, § 306(a), established an exception to the TCA exemption. Under § 306( c ), an driver/employee is covered (i.e., non-exempt) under the FLSA if he or she is an employee of a motor carrier whose job, "in whole or in part,"

affects the safe operation of vehicles lighter than 10,000 pounds, except vehicles designed to transport hazardous materials or large numbers of passengers.

In short, if any part of Defendant's employees' jobs include driving a vehicle weighing under 10,000 pounds, that employee is covered under  § 207(a)(1) of the FLSA.

The Plaintiff alleges in his complaint, and swears in his declaration, that in the course of his employment, he drove a vehicle weighing less than 10,000 pounds, was paid on a day-rate basis, and received no overtime compensation even though he worked more than 40 hours per week.  He has made, at a minimum, a "modest factual showing" that the Defendant's other drivers/employees are "similarly situated." Again, employees are similarly situated if they were subject to "a single, FLSA-violating policy" by their employer, or if their "claims [are] unified by common theories of defendants' statutory violations." *O'Brien*, 575 F.3d at 584–85. *See also Boyd v. Schwebel Baking Co.*, 2016 WL 3555351, at *6 (N.D. Ohio June 30, 2016) ("A company-wide consistent application of a classification of a position as exempt can serve as a basis for conditional certification of an FLSA class where the classification is the source of the alleged violation.").

First, Mr. Sperling states in his Declaration that the vehicles the company provides have different gross weights, "*many of which have a GVWR over 10,000 pounds*," adding, "S&K United also utilizes rental vehicles, the GVWR of which vary, with *many having a GVWR of more than 10,000 pounds*." ECF 14-1,  PageID.156, ¶ 15 (emphasis added). "Many" does not mean "all," and the Declaration therefore implies that at least "some" of the vehicles are under 10,000 pounds. And the drivers of those vehicles would fall outside the MCA exemption to the FLSA.

Second, the Sperling Declaration states that where drivers work and how many hours they work varies, and that "drivers start and end their workday based on their

assigned route(s)." *Id*., PageID.155, ¶¶ 11-12. Significantly, Mr. Sperling does not dispute Plaintiff's claim that he and other drivers may work more than 40 hours in a given work week.

Next, Defendant admits in its answer to ¶ 22 of Plaintiff's complaint that "[r]egardless of the distribution center, Defendant paid each Driver on a day rate basis and classified them as exempt from overtime." ECF No. 8, PageID.38.  Moreover, Mr. Sperling states in his Declaration that beginning May 9, 2020, "S&K United began paying all drivers who drive a motor vehicle with a GVWR of less than 10,001 lbs. at least once during a workweek on an hourly rate."  This implies that not only are there some drivers who are assigned to vehicles weighing under 10,000 pounds, but that prior to May 9, 2020 Defendant did *not* pay all those drivers an hourly rate.

Now, it may be that following discovery, some putative members of the collective may fall within the MCA exemption to the FLSA, and Defendant argues that "[b]ecause coverage under the FLSA depends on an individual, fact-specific, case-by-case analysis, Plaintiff must make some factual showing that the facts and circumstances surrounding his compensation structure and position are similar to *all putative class members*."  ECF No. 14, PageID.135 (emphasis in original). But the "individual, fact-specific" analysis is more properly reserved for decertification arguments at the second stage, not the first, or notice-stage. *See Boyd*, at *12 (defendants' "individualized defenses" argument best reserved for the decertification stage) (citing *Creely v. HCR ManorCare, Inc*., 789 F. Supp. 2d 819, 828 (N.D. Ohio 2011)); *Hayes v. Butts Foods, Inc*., 2019 WL 5095793, at *3 (W.D. Tenn. July 30, 2019), report and recommendation adopted, 2019 WL 4317644 (W.D. Tenn. Sept. 11, 2019) ("given the lenient standard for notice, the purpose and intent of conditional certification, and the factual inquiries necessary for such [individual]

defenses that go beyond the scope of this stage of the proceedings, these defenses are best reserved for the decertification stage"); *Gomez v. Loomis Armored US, LLC*, 2017 WL 2999422, at *5 (W.D. Tex. Apr. 3, 2017) ("The facts that Plaintiffs might be exempt from the FLSA due to the MCA ... and that application of the MCA exemption requires a week-by-week analysis do not preclude conditional certification."). And, as the Sixth Circuit noted in *Comer*, "At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." 454 F.3d at 547.

I therefore find that having shown that S&K drivers are similarly situated, Plaintiff is entitled to conditional certification of the collective.

Finally, Defendant argues that conditional certification should be denied because Plaintiff's request is duplicative of similar litigation pending against FedEx in the Western District of Pennsylvania. *Sullivan-Blake, et al. v. FedEx Ground Package Sys., Inc.*, No. 2:18-cv-01689 (W.D. Pa.).[3] Defendant thus invokes the "first-to-file rule," which the Sixth Circuit has noted "conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Baatz v. Columbia Gas Transmission*, LLC, 814 F.3d 785, 789 (6th Cir. 2016). The *Baatz* Court also stated, "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Id.* (internal quotation marks and citation omitted). In addition, "[t]he first-to-file rule generally applies where (1) the two actions involve nearly identical parties; (2) the two actions

---

[3] The complaint in the Western District of Pennsylvania case is appended to Defendant's response as Exhibit 2. ECF No. 14-2, PageID.162.

involve nearly identical issues; and (3) no equitable reasons or special circumstances are present to defeat the first-to-file rule." *Cook v. E.I. DuPont de Nemours & Co.*, 2017 WL 3315637, at *2 (M.D. Tenn. Aug. 3, 2017). Application of the first-to-file rule is entrusted to the Court's discretion, and "Courts may dispense with the rule for equitable reasons or when special circumstances are present...." *Nartron Corp. v. Quantum Research Group, Ltd.*, 473 F.Supp.2d 790, 795 (E.D.Mich.2007).

First, in the Pennsylvania litigation, FedEx argued that the plaintiffs in that case failed to address earlier-filed collective action pending in other districts, and that "Plaintiffs' failure to propose any plan for those 'first-filed' cases raises the potential of competing collective actions." *FedEx Opinion, p. 9*, Plaintiff's Reply, Exhibit 1, ECF No. 21-1, PageID.449. Rejecting this argument, the Court held:

> "The Court finds, however, that such concerns do not warrant a ruling denying conditional certification because 'the first-to-file doctrine advanced by [FedEx] applies in motions to dismiss, stay or transfer and does not apply here to simply exclude certain plaintiffs from a class.' *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68 (E.D. Pa. 2009). Additionally, such issues can be addressed and resolved at subsequent stages of this litigation." *Id.*, PageID 449-450.

The same reasoning applies here. Defendant's arguments alleging duplicative litigation can and should be resolved at a later date.

In addition, and unlike cases cited by Defendant,[4] S&K is not a named defendant in the Pennsylvania case, where FedEx is the only named defendant. While the FedEx litigation does entail an argument of "joint employment" between FedEx employees and employees of so-called independent service providers (such as S&K), it is not certain that such theory will ultimately prevail. If it does not, then the failure to conditionally certify

---

[4] *See, e.g., Brown v. Jacob Transp.*, 2017 WL 7725268 (D. Nev. Sept. 28, 2017) (same defendant in both cases); *Cook v. E.I. du Pont de Nemours & Co..*, 2017 WL 3315637 (M.D. Tenn. Aug. 3, 2017)(defendant is identical in both cases).

the collective in the present action will work to the prejudice of those S&K employees who are members of the collective.

Plaintiff also points out that there is a discrepancy between Mr. Sperling's statement in his Declaration that S&K contracted only with FedEx, and the answer to the complaint, where Defendant admitted that it contracts "with FedEx and other larger companies." Of course, the Court does not resolve factual disputes at the conditional certification stage. *See Kim v. Detroit Med. Informatice, LLC*, 2019 WL 6307196, *3 (E.D. Mich. Nov. 25, 2019). But depending upon how that factual issue is resolved in future stages of this litigation, the collective in the Pennsylvania FedEx case would potentially be smaller than in the present case.

 Accordingly, there is a sufficient practical and equitable basis to not apply the first-to-file rule. *Nartron Corp*., 473 F.Supp.2d at 795.[5]

## IV. CONCLUSION

I recommend that Plaintiffs' pre-discovery motion for conditional certification and court-authorized notice to potential opt-in Plaintiffs [ECF No. 13] be GRANTED,

I further recommend that the Court grant conditional certification and approve distribution of the Notice appended to Plaintiff's motion as Exhibit 1. [ECF No. 13-1, PageID.93-97.

I further recommend that the Court order Defendant to identify all potential opt-in plaintiffs within 14 days of the entry of any order conditionally certifying the collective.

I further recommend that distribution of the Notice be permitted by email and text

---

[5] Mr. Sperling has filed a supplemental declaration, in which he states that he received an opt-in notice in the Pennsylvania case. ECF No. 19-1, PageID.420. I do not find, however, that this changes the analysis as to why the first-to-file rule should not be applied in the present case.

message, in addition to first-class mail.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. Steven Whalen
United States Magistrate Judge

Dated: February 25, 2021

-12-

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 25, 2021 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager