## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROGER RILEY,** individually, and on
behalf of others similarly situated,

Case No. 2:20−cv−10577−PDB−RSW

        Plaintiff,

vs.

Hon. Paul D. Borman

**SK UNITED CORP.,**
A Texas Corporation,

        Defendant.

---

### UNOPPOSED MOTION TO APPROVE SETTLEMENT

Plaintiff, Roger Riley, though his counsel respectfully requests that the Court approve the settlement agreement reached between the parties for the reasons set forth in the attached brief.

Pursuant to L.R. 7.1, Plaintiff's counsel certifies that this motion is unopposed.

Dated: October 29, 2021

Respectfully Submitted,
*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877)
crash@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROGER RILEY,** individually, and on
behalf of others similarly situated,

           Case No. 2:20−cv−10577−PDB−RSW

        Plaintiff,

vs.                  Hon. Paul D. Borman

**SK UNITED CORP.,**
A Texas Corporation,

        Defendant.

---

## <u>BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE</u>

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................. ii

STATEMENT OF QUESTION PRESENTED..................................... vi

CONTROLLING AUTHORITIES...................................................... vii

I.     INTRODUCTION .........................................................................1

II.    BACKGROUND ...........................................................................2

      A.    THE MOTOR CARRIER EXEMPTION ...........................2

      B.    PROCEDURAL BACKGROUND...................................5

III.   ARGUMENT...............................................................................7

      A.    STANDARD OF REVIEW ...............................................7

            1.    The Absence of Fraud or Collusion in the Settlement.............9

            2.    Complexity, Expense, and Likely Duration of the Litigation..................................................................10

            3.    Amount of Discovery Engaged in by the Parties...................11

            4.    The Likelihood of Success on the Merits ...............................12

            5.    The Opinions of Plaintiffs' Counsel and The Named Plaintiff........................................................................13

            6.    Whether the Settlement Is the Product of Arm's Length Negotiations as Opposed to Collusive Bargaining ................13

            7.    Whether the Settlement is Consistent with the Public Interest........................................................................15

      B.    THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED ...............................................16

i

    C.      THE SERVICE AWARD SHOULD BE APPROVED....................17

    D.      ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED.......................................................................18

IV.   CONCLUSION...........................................................................21

# INDEX OF AUTHORITIES

**Cases**

*Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362 (E.D. Mich. Nov. 2, 2012) ..................................................................................... vi, 7, 9

*Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008 (E.D. Tenn. Dec. 26, 2012) ................................................ 16

*Belmont v. Homes of Opportunity, Inc.*, Civil Case No. 18-10854, 2018 U.S. Dist. LEXIS 209920 (E.D. Mich. Dec. 13, 2018) ...................................... 17

*Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014) .................................... 16, 19

*Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575 (5th Cir. 2018) ................. 4

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ................. 8

*Crawford v. Lexington-Fayette Urban Cnty. Gov't*, CIV. A. 06-299-JBC, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) ....................................... 9, 16

*Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147 (10th Cir. 2016) ................ 3

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446  (N.D. Ohio Mar. 8, 2010) .................................................. 17

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985) ....................... 15

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ................................................................... 19

*Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) ........................................................................... 18, 19

*Finn v. Dean Transp., Inc.*, 53 F. Supp. 3d 1043 (M.D. Tenn. 2014) .................... 3

*Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th. Cir. 2016) ............................................................................................................ 19

*Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922 (S.D. Ohio June 24, 2011) .............................................................................. 16

*Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ...................... 15

*Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860 .......................................... 21

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003) .................................................. 17

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ......... 10, 21

*In re Telectronics Pacing Sys., Inc.* 137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................................. 10, 11

*Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) .................................... 9

*Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947) ........................................... 5

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................................................................................................... 8, 16

*Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012) ................ 8

*Norman v. QES Wireline LLC*, No. 4:16-cv-02396, 2019 U.S. Dist. LEXIS 165504 (S.D. Tex. Aug. 30, 2019) ............................................................. 4

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ......................................... 19

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) .................... 19

*Rychorcewicz v. Welltec, Inc.*, 768 Fed. App'x 252 (5th Cir. 2019) ....................... 4

*Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 WL 5797897 (S.D. Ohio Sept. 29, 2020) ............................................................................ 11

*Snook v. Valley Ob-Gyn Clinic, P.C.*, No. 14-CV-12302, 2015 WL 1444400 (E.D. Mich. Jan. 12, 2015) ........................................................... 8

*Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573783 (S.D. Ohio Dec. 30, 2005) ................................................................................. 14, 22

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495 (6th Cir.1984) ..................................................................................... 19

*Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900 (6th Cir. 2002) ...................... 3

*Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226 (S.D. Ohio June 5, 2014) ................................................................................ 16

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ............................................ 13

**Other Authorities**

29 CFR § 782.3 ........................................................................................................ 5

29 U.S.C. § 201 ........................................................................................................ 1

29 U.S.C. § 213(b)(1) ............................................................................................... 2

29 U.S.C. § 216(b) .................................................................................................. 18

49 U.S.C. § 13102(15) .............................................................................................. 3

*Newberg on Class Actions* § 11.51 (3d ed. 1992)............................................... 14

Pub. L. 110-244, § 306(a) ....................................................................... 4

U.S. DOL, WHD, Field Assistance Bulletin 2010-2 ............................................ 4

**Rules**

Fed. R. Civ. P. 23 .................................................................................. 13

## <u>STATEMENT OF QUESTION PRESENTED</u>

**I.   WHETHER THIS COURT SHOULD APPROVE THE SETTLEMENT REACHED BETWEEN THE PARTIES FOLLOWING MEDIATION OF A BONA FIDE DISPUTE?**

Plaintiff answers: Yes
Defendant answer: Yes

## <u>CONTROLLING AUTHORITIES</u>

*Arrington v. Mich. Bell Tel. Co*., 2012 U.S. Dist. LEXIS 157362 (E.D. Mich. Nov. 2, 2012) (Lawson, J.)

*Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

## I.    INTRODUCTION

This wage and hour collective action lawsuit was filed by Roger Riley, individually and on behalf current and former day rate-paid drivers who he alleged were misclassified as exempt from overtime under the Motor Carrier Exemption ("MCE") to the Fair Labor Standards Act. Plaintiff alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201–19.  Although Defendant denies all liability, the parties have agreed to a settlement, the terms of which are contained in the Settlement Agreement attached hereto as **Exhibit A**.

Plaintiff, individually and on behalf of the Collective (collectively "Plaintiffs") and Defendant SK United Corp. ("SK United") have agreed, subject to Court approval, to resolve these wage and hour claims. The Settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute, was reached after contested litigation, and was the result of arms'-length settlement negotiations conducted by Michael L. Russel, a well-respected wage and hour mediator.

Thus, Plaintiffs respectfully request that the Court issue an order: (1) finding that the Settlement Agreement attached as Exhibit A is a fair and reasonable resolution of a *bona fide* dispute; (2) approving a service award for Named Plaintiff Roger Riley, and (3) approving the requested attorneys' fees and expenses. Defendants do not oppose the relief sought herein.

1

## II.   BACKGROUND

This case stems from SK United's employment of Plaintiff and the opt-ins as delivery drivers under SK United's contractual arrangement with FedEx Ground Package Systems, Inc. ("FedEx") in Texas and Michigan. According to Plaintiffs, SK United misclassified them as exempt from overtime under the Small Vehicle Exception to the MVE. After conditional certification was granted, notice was mailed, and the opt-in period closed. In sum, 15 drivers have opted in to the suit, in addition to the Plaintiff. As discussed further below, of the 16 drivers in this case, only 8 drivers had damages under the sole theory of liability pled in this case.  The 8 drivers that Plaintiff's Counsel determined had no damages were contacted and given the opportunity to refute the fleet records and employment records produced by SK United in advance of the mediation.  Ultimately, none of the drivers disputed the accuracy of SK United's records, and thus, those drivers withdrew their consent join forms (opted out) and preserved all rights they had before this litigation commenced.

### A.   The Motor Carrier Exemption

The FLSA requires employers to pay non-exempt employees overtime for hours worked over 40 in a workweek. Under the FLSA, employees subject to the Motor Carrier Act ("MCA") are exempt from the FLSA's overtime pay requirement. 29 U.S.C. § 213(b)(1) ("any employee with respect to whom the

2

Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."). Section 13(b)(1) of the FLSA provides an overtime exemption for employees who are within the authority of the Secretary of Transportation to establish qualifications and maximum hours of service pursuant to the MCA, except those employees covered by the small vehicle exception described below.

The MCE exempts from the FLSA overtime regulations an employee "(1) who works for a private motor carrier that provides transportation in interstate commerce and (2) whose work activities affect the safety of operation of that motor carrier." *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002) (internal quotations and citations omitted); *see also* 29 CFR § 782.2 (MCE exemption). The exemption applies "in all workweeks when he is employed at such job . . . regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek." *Id.* An entity that transports property belonging to the carrier that is being transported for sale falls within the confines of the Act. *See* 49 U.S.C. § 13102(15); *see also Finn v. Dean Transp., Inc.*, 53 F. Supp. 3d 1043, 1051 (M.D. Tenn. 2014) (analyzing MCE). An employee engages in interstate commerce where the essential character of the shipment is interstate in nature. *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1155 (10th Cir. 2016) (quotations omitted); *see also Finn*, 53 F. Supp. 3d at

1051 (local deliveries within the Nashville was interstate in nature). An employee

exempt under MCE is not only exempt in the week that the exemption applies, but

for a four-month period following the date the employee became exempt. *See* U.S.

DOL, WHD, Field Assistance Bulletin 2010-2.

But the Technical Corrections Act ("TCA") provides an exception to the

MCE. The TCA extends overtime protection to certain "covered" employees. Pub.

L. 110-244, § 306(a). A "covered" employee is an individual employed by a motor

carrier or motor private carrier, whose work as a driver affects "the safety of

operation of motor vehicles weighing 10,000 pounds or less in transportation on

public highways in interstate or foreign commerce." *Id*. § 306(c). The parties have

identified no Sixth Circuit cases addressing which party carries the burden of

establishing the TCA exception, but the Fifth Circuit has held that employees have

the burden of establishing the exception by showing that they worked on a TCA-

eligible vehicle (*i.e.,* a vehicle with a GVWR weighing less than 10,001 pounds) on

more than a *de minimis* basis. *See Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d

575, 580 (5th Cir. 2018); *Norman v. QES Wireline LLC*, No. 4:16-cv-02396, 2019

U.S. Dist. LEXIS 165504, at *18 (S.D. Tex. Aug. 30, 2019) (citing *Rychorcewicz v.

Welltec, Inc.*, 768 Fed. App'x 252, 256-257 (5th Cir. 2019).

The TCA applies only in work weeks where an employee operates a motor

vehicle that weighs less than 10,001 pounds. *See Rychorcewicz*, 768 Fed. App'x at

256-257. Thus, an employee can be exempt one week and not another. A driver "directly affects 'safety of operation' within the meaning of section 204 of the Motor Carrier Act whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of that act." 29 CFR § 782.3 (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947) (citations omitted)). Thus, under the TCA, if an employee operates a vehicle that has a GVW of less than 10,001 pounds, the employee has a right to be paid overtime only during the work week in which he or she does so. But drivers who only operate motor vehicles with a GVW of 10,001 pounds or more are exempt under the MCE. Furthermore, SK United has argued (and provided case law) to support that the small vehicle exception does not apply when the operation of the small vehicle during the work week is *de minimis*. Plaintiff disputes the application of the *de minimis* doctrine in this case. Nonetheless, in this case the parties dispute whether the Plaintiffs were exempt under the MCE and dispute which work weeks Plaintiff were exempt.

Thus, this settlement provides a compromise of a bona fide dispute.

### B.     Procedural Background

This collective action was initially filed by Plaintiff Riley in March 2020. (ECF No. 1.)  SK United filed its Answer on April 20, 2020 denying liability to plaintiff or the putative class. (ECF No. 8). On May 18, 2020 Riley moved for conditional certification. (*See* ECF No. 13)

SK United opposed Conditional Certification and filed its opposition brief on June 8, 2020. (ECF No. 14), On June 19 the Plaintiff filed his reply (ECF No. 21). Thereafter, the Magistrate Judge held oral argument on the certification motion on June 23 and on February 25, 2021 issued his report and recommendation recommending the Court grant conditional certification. (ECF No. 23).

On March 9, 2021 the Defendant filed objections to the report and recommendation. (ECF No. 24). Plaintiff filed his response to the objections on March 23, 3021 (ECF No. 26), and Defendant filed its reply on March 30, 2021 (ECF No. 27). On May 20, 2021, the Court adopted in part and rejected in part, the Magistrate Judge's Report and Recommendation. (ECF No. 29). As a result, the Court certified a collective defined as: "All current and former day-rate-paid drivers who worked for defendant in the united states at any time between May 20, 2018 and May 9, 2020." (ECF No. 29).

Following the Courts order, Plaintiff sent notice to prospective members of the collective and in total 15 individuals joined this action. Since then, the parties engaged in an informal exchange of information to facilitate settlement discussions between the parties. This included Plaintiff counsel reviewing employment information, interviewing several of the Opt-In Plaintiffs, and preparing a damage model. Specifically, Plaintiff reviewed the payroll data for each opt-in that contained the number of "on duty" hours the driver worked, then compared that

6

information with the fleet records that identified the gross weight of the vehicle(s) the driver drove in each work week.  The parties also engaged in mediation. After a full review of the information obtained and open and full debate over the legal and factual issues, and after engaging in rigorous settlement negotiations with the aid of the mediator, the Parties agreed to the terms of settlement that they believe represent a fair, reasonable, and just compromise of disputed issues. That Settlement Agreement is now before the Court for approval.

Because the negotiations leading to this settlement were adversarial, non-collusive, and conducted at arms' length, the Plaintiffs ask this Court to approve it. The Parties have conditioned the overall Settlement upon the Court's approval of its terms. A copy of the parties' settlement agreement is attached as **Exhibit A**. A proposed order approving settlement is attached as Exhibit D, a copy of which will be submitted to the Court via the ECF Utilities program.

## III.    ARGUMENT

### A.    Standard of Review

Generally, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co*., 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (Lawson, J.) (citing

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).[1]

Therefore, "[w]hen employees bring a private action for back wages under the

FLSA, and present to the district court a proposed settlement, the district court may

enter a stipulated judgment after scrutinizing the settlement for fairness. If the

settlement is a reasonable compromise over issues that are actually in dispute, the

Court may approve the settlement in order to promote the policy of encouraging

settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal

citations and quotations omitted); *Lynn's Food Stores*, 679 F.2d at 1354.

The Sixth Circuit has identified seven factors that should aid courts in the

determination of whether a proposed FLSA settlement is fair, reasonable, and

adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely
> duration of the litigation; (3) the amount of discovery engaged in by the
> parties; (4) the likelihood of success on the merits; (5) the opinions of
> Plaintiffs' Counsel and class Representatives; (6) the reaction of absent
> class members; and (7) the public interest.

---

[1] Circuits are split on whether a private settlement of an FLSA claim requires court
approval. *Compare Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir.
2012) (enforcing a settlement that was reached without judicial or Department of
Labor approval), *with Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d
Cir. 2015) (holding FLSA settlements require approval from the district court or
Department of Labor), and *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350
(11th Cir. 1982) (same).   The Sixth Circuit has yet to rule definitively on the
question, but prevailing case law in this district presumes that claims under the FLSA
"may not be settled without supervision of either the Secretary of Labor or a district
court." *See Snook v. Valley Ob-Gyn Clinic, P.C.*, No. 14-CV-12302, 2015 WL
1444400, at *1 (E.D. Mich. Jan. 12, 2015) (citations omitted).)

*Arrington*, 2012 U.S. Dist. LEXIS 157362, *2–3; *see also Crawford v.  Lexington-Fayette Urban Cnty. Gov't*, CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) *(citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The above list is non-exhaustive, and courts do not necessarily apply all the factors; rather, the factors are guideposts used to determine the fairness of a proposed settlement. *See Arrington*, 2012 U.S. Dist. LEXIS 157362, *2–3 "A court applying these factors must do so in the context of the actual settlement." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *3.

### 1.   The Absence of Fraud or Collusion in the Settlement

 In the instant case, there is a *bona fide* dispute over whether Defendant violated the FLSA. Plaintiffs have alleged Defendant misclassified Plaintiff as exempt under the MCE. Defendant denies Plaintiffs' allegations and maintains that it has properly paid Plaintiffs and the collective for all hours worked. The parties also dispute the proper method for determining whether activities were *de minimis,* if the *de minimis* defense even applies, and whether this case warrants liquidated damages. As a result of these bona fide disputes, the parties reached a compromise settlement.

There was no fraud or collusion in reaching this Settlement. The matter was highly litigated through conditional certification. Thereafter, the parties engaged in

extensive informal discovery and settlement was reached only with the assistance

of a highly skilled and well-respected wage and hour mediator – Michael L. Russell.

(See,  https://milesmediation.com/neutrals/michael-russell/).  Through  settlement,

the parties will eliminate the risks and costs they would bear if this litigation

continued. In agreeing to the proposed Settlement, the Parties had sufficient

information and conducted an adequate investigation to allow them to make an

educated and informed analysis and conclusion about the risks and benefits of the

settlement. Thus, this factor favors approval.

## 2.    Complexity, Expense, and Likely Duration of the Litigation

In evaluating a proposed FLSA settlement, the court also must weigh the

risks, expense, and delay the plaintiffs would face if they continued to prosecute the

litigation through trial and appeal against the amount of recovery provided to the

class in the proposed settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D.

508, 523 (E.D. Mich. 2003). Courts have consistently held that the expense and

possible duration of litigation are major factors to be considered in evaluating the

reasonableness of a settlement. *See e.g.*, *In re Telectronics Pacing Sys., Inc.* 137 F.

Supp. 2d 985, 1013 (S.D. Ohio 2001). For class and collective actions courts view

settlement favorably because it "avoids the costs, delays and multitudes of other

problems associated with them." *Id*. at 1013.

Here, but for the Settlement, the case would have continued to be fiercely

contested by the parties. Defendant, which is represented by capable and well-versed wage and hour counsel, has demonstrated the commitment to defend the case through trial and beyond trial, if necessary. The expense of continued litigation would be substantial as the parties would have to complete a lengthy and extensive discovery and trial. And trial would involve many witnesses; the introduction of voluminous documentary and deposition evidence; vigorously contested motions; and the expenditure of enormous amounts of judicial and counsel resources. Even if successful at trial, there most certainly would be appeals which could deny the Collective any recovery for years. Avoiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 WL 5797897, at *2 (S.D. Ohio Sept. 29, 2020) (recognizing that "[c]ontinued litigation would involve considerable expenditures of time and resources of the parties and the Court. If this case were to continue, the parties would expend significant time and money prosecuting the litigation through dispositive motions, trial, and possible appeals."). The value of an immediate recovery here outweighs the mere possibility of future relief after protracted and expensive litigation.  Thus, this factor favors approval.

### 3.    <u>Amount of Discovery Engaged in by the Parties</u>

The Parties have exchanged significant amounts of data regarding Plaintiffs and the collectives' claims. This includes substantial time, pay, and vehicle data.

Plaintiffs' Counsel has have spent significant time and effort in the compilation of damage assessments. Plaintiffs' Counsel has also spent significant time reviewing these records and damage calculations with Plaintiffs for accuracy.   The Parties engaged in several attempts to resolve this case and participated in formal mediation. Plaintiffs' Counsel was informed of the available damages and understood both the legal and factual issues involved and were able to meaningfully engage in settlement negotiations with Defendant. Thus, this factor favors approval.

### 4.     <u>The Likelihood of Success on the Merits</u>

Plaintiffs' likelihood of success on the merits and the amount they would be awarded is uncertain, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendant denies, that they are owed compensation due to Defendant's alleged violations of the FLSA. The range of possible recovery—if any—is open to dispute. And even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both sides, the specific amount of their recovery is uncertain, and may be as Defendant contends—*de minimus*. Thus, both Parties have significant risk in continuing to litigate this case, and as such, the compromise was in their best interests. As a result, the proposed settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.  Thus, this factor favors approval.

**5.**     **The Opinions of Plaintiffs' Counsel and The Named Plaintiff**

Plaintiffs' Counsel and Named Plaintiff are of the opinion that this proposed Settlement is a fair and reasonable compromise. **Exhibit B,** Turner Declaration at ¶¶ 10-13**.** Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs . . . ." *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983). Plaintiffs' counsel has extensive experience in handling FLSA collective actions and they have thoroughly investigated and analyzed the claims alleged in these actions. Based on their experience, they have made informed judgments regarding the Settlement and believe that they are fair, reasonable and adequate. Additionally, there are no "absent class members" in this case. Plaintiffs brought and settled this case under the FLSA and its collective action provision. 14 opt-in Plaintiffs joined this litigation by filing a consent form. Because FLSA collective actions employ an "opt-in" mechanism, as opposed to the "opt-out" mechanism of Rule 23, no one is bound by this proposed settlement except Plaintiff, Defendant, and the opt-in Plaintiffs. Thus, this factor favors approval.

**6.**     **Whether the Settlement Is the Product of Arm's Length Negotiations as Opposed to Collusive Bargaining**

As noted above, this lawsuit has been heavily contested. SK United opposed certification and objected to the Report and Recommendation of the Magistrate Judge. Since then, the Court certified a collective defined as: "All current and former

day-rate-paid drivers who worked for defendant in the united states at any time between May 20, 2018 and May 9, 2020." (ECF No. 29).

Notice was then mailed to prospective members of the collective and in total at total of (15) individuals have joined this action, in addition to the Plaintiff. After that, the Parties engaged in an informal discovery to obtain an early resolution of this matter and meditated on September 27, 2021. Yet no settlement occurred until Plaintiffs' Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained. The risks of non-recovery, addressed above, were considered by Plaintiffs' Counsel and the Named Plaintiff when negotiating the proposed Settlement. Certainly, Plaintiffs would always like the Settlement to be greater than it is, but those desires must be tempered against the risk of obtaining less (or nothing) if the case proceeded through trial (and appeal). Oftentimes, the best opportunity to resolve a case is when uncertainty over those still undecided issues remains for both sides.

Without evidence to the contrary, the Court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *Telectronics,* 137 F. Supp. 2d at 1018 (citing *Newberg on Class Actions* § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless

evidence to the contrary is offered.")). The Settlement in this case came after contested litigation and was a product of formal mediation. Far from collusion, the current settlement was forged through arms' length negotiations. Thus, this factor favors approval.

> ### 7.   Whether the Settlement Is Consistent with the Public Interest.

The final factor that the Court considers in evaluating a settlement is whether the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). This is particularly true when the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985). Here, it is in the public interest to approve this Settlement.

The Settlement here resolves the claims of the collective s in exchange for a fair return, eliminates the risk to the class of complete non-recovery, provides certainty to Defendant, and eases the burdens on the already heavily taxed courts. In sum, given the complexity, expense, likely duration and risks of litigation, the state of the proceedings, the negotiations leading up to, and the ultimate terms of the Settlement, the proposed Settlement is fair, adequate and reasonable. Thus, this

factor favors approval.

## C.        The Settlement Is Fair and Reasonable and Should Be Approved

Courts approve FLSA settlements when they are reached because of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores,* 679 F.2d at 1355; *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *1–2 (E.D. Tenn. Dec. 26, 2012).[2]

The FLSA Settlement in this case meets the standard for approval. All seven settlement factors courts are to consider support approval of the settlement. And the Settlement is substantial in light of the nature of the claims alleged by Plaintiffs. Under the settlement, awards in this case will provide a significant recovery for the Collective's claims, including a recovery for all claims calculated based upon the total amount of time each Plaintiff worked during a small vehicle workweek and an allocation for liquidated damages. Moreover, the settlement is based upon hours records maintained by Defendant during which Plaintiff operated motor vehicles

---

[2] "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042, at *3 (D. Conn. July 31, 2014). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 56089 (E.D. Ky. July 22, 2008).

with a GVW of less than 10,000 pounds, or in which Defendants could not affirmatively state that the vehicle Plaintiffs operated had a GVW that exceeded 10,000 pounds.

## D.     The Service Award Should Be Approved

The Settlement Agreement provides for a service award to the Collective Representative and Named Plaintiff, Roger Riley, in addition to his settlement payment. Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted); *Belmont v. Homes of Opportunity, Inc.*, Civil Case No. 18-10854, 2018 U.S. Dist. LEXIS 209920, at *5 (E.D. Mich. Dec. 13, 2018).

In this case, the Service Award sought under the proposed settlement reflects efforts by the Collective Representative in assisting Plaintiff's Counsel with the prosecution of this case and for acting as the public face of this litigation.  Riley engaged in numerous conferences with Plaintiff's Counsel, dating back to long

before the litigation commenced, then throughout the litigation process, and provided substantial documents and other information which was of great importance to this case. Riley stayed informed on the case from the outset and performed a valuable service, both to his co-workers and to the public as a whole. In sum, without Riley, the other members of the Collective would not have received any damages and the settlement before the Court would not have been possible. Lastly, the class representative has signed a full release as part of the settlement, which exceeds the wage and hour release given by class members. Thus, the Service Award is warranted and should be approved.

### E.    Attorneys' Fees and Costs Should be Approved

Defendant has agreed to pay the Plaintiffs' Counsel's attorneys' fees and costs as set forth in the Settlement Agreement. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."

*Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The purpose of fee shifting statutes "is to induce a capable attorney to take on litigation that may not otherwise be economically viable." *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269, 280 (6th. Cir. 2016) (*citing Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (explaining that a "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case")). The standard for reviewing a request for attorney's fees is reasonableness, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991), and there is no specific numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. *See Fegley*, 19 F.3d at 1134–43 (6th Cir. 1994) (recognizing that an FLSA fee award "encourages the vindication of congressionally identified policies and rights").[3]

---

[3] See *also Bozak*, 2014 WL 3778211, at *6 ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotes and citation omitted). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Fegley*, 19 F.3d at 1134; *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce . . . benefits in order to maintain an incentive to others").

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573783, at *3 (S.D. Ohio Dec. 30, 2005) ("[T]he Sixth Circuit has emphasized the private attorney general theory of fee recovery: the importance of bringing [FLSA] cases, even if only nominal damages, are recovered to vindicate employee rights and Congressional policy").

In the present case, the fee awarded to Plaintiff's Counsel will result in a negative multiplier. That is, they will recover less than their lodestar. Currently, Plaintiff's Counsel has incurred 165.3 hours and $78,182.50 in attorney fees. The declaration of Plaintiff's Counsel provides more details of the reasonableness of Plaintiff's fee and cost request. *See*, **Exhibit B** at ¶¶ 14-23. The procedural history of this case supports the reasonableness of the fees incurred, but Plaintiff's Counsel will present detailed billing entries for an in-camera review if the Court deems it necessary. Under the Settlement, Plaintiff's Counsel will receive $54,863.14 or approximately 70% of their lodestar.

Additionally, Plaintiff's Counsel has incurred $666.67 in litigation expenses, which includes postage ($94.86); Photocopying ($93.00); filing fees ($400.00); and other expenses ($78.81). All of the fees and expenses incurred were reasonable and necessary in achieving the Settlement before the Court for approval. *See*, *Id*. at ¶ 22.

*See also, Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at \*9 (approving payment of costs when "documented by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases"). In total, Plaintiffs' Counsel has expended and seeks reimbursement for $666.67 in litigation costs and expenses in this matter to date. (See Ex. C at ¶22).

Accordingly, Plaintiffs' Counsel's request for attorneys' fees and costs is reasonable and should be approved.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement; (2) approving the Service Awards for the Named Plaintiff; and (3) approving Plaintiffs' Counsel Attorneys' Fees in the amount of $64,863.14 and Costs in the Amount of $666.67.

Dated: October 29, 2021

<div style="margin-left:40%">

Respectfully Submitted,
*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877)
crash@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

</div>

## CERTIFICATE OF SERVICE

I certify that on October 29, 2021, I electronically filed the forgoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

<div align="right">

*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877)
SOMMERS SCHWARTZ, P.C.

</div>